**Marjorie A. CREAMER,**
**Plaintiff–Appellant,**

v.

**LAIDLAW TRANSIT, INC.,**
**Defendant–Appellee.**

No. 94–1593.

United States Court of Appeals,
Tenth Circuit.

June 11, 1996.

Andrew T. Brake (Lee Thomas Judd and Brian L. Lewis, with him on the briefs) of Andrew T. Brake, P.C., Denver, Colorado, for Plaintiff–Appellant.

Thomas A. Feldman (Larry Besnoff of Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pennsylvania, with him on the brief), Denver, Colorado, for Defendant–Appellee.

Before BRORBY, BRISCOE and LUCERO, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiff Marjorie A. Creamer brought this action against her former employer, Laidlaw Transit, Inc., alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* After holding a bench trial, the district court entered judgment in Laidlaw's favor. We affirm.

## I

The following summary of the relevant facts is drawn from the district court's findings of fact and conclusions of law: In February 1991, Ms. Creamer applied for and received a full-time position as a bus driver at Laidlaw. When she was first hired, Laidlaw provided Ms. Creamer with extensive training. On one occasion, Ms. Creamer's training supervisor used "inappropriate language" in her presence. Ms. Creamer was "unable to indicate with any specificity what she remembers about the incident other than she felt uncomfortable" and she was "unable to state the language with any specificity." Ms. Creamer did not report the incident to her supervisors, but the trainer did. Action was taken to prevent further contact between the trainer and Ms. Creamer, and Ms. Creamer was not reassigned to, or even saw, that trainer again.

After she completed her training, Ms. Creamer was assigned to work as a full-time bus driver, either on a "straight shift" or a "split shift." During the off-duty periods between the split shifts, Ms. Creamer spent time in the bus drivers' lounge at Laidlaw's Commerce City headquarters. One of Ms. Creamer's fellow employees described the lounge as "a typical old truck driver place," and said it was noisy, smoky, and that the drivers made off-color jokes and "sexual slurs." He testified, however, that what went on in the lounge did not seem to bother the people involved, and that although the management probably knew what the atmo-

sphere was in the lounge, it did not do anything to change the situation. Ms. Creamer testified there were cartoons of an inappropriate sexual nature of the bulletin board, but, in light of testimony from other witnesses and the vagueness of Ms. Creamer's own testimony, the district court found "the evidence with respect to the cartoons is totally nondescript, that there appears to be no specific evidence of anything which would be considered by a reasonable person to be offensive, especially from a sexual nature."

During the time she spent in the bus driver's lounge, Ms. Creamer became acquainted with another Laidlaw employee, Jack Hoff. The district court described Mr. Hoff as a "somewhat loud person," "happy-go-lucky," "abrasive to some folks," and "obviously a joker and a very demonstrative-type person." Ms. Creamer and Mr. Hoff were friendly at first. They discussed their personal lives, played cards, and ate lunch together both on and off Laidlaw's premises. Ms. Creamer testified Mr. Hoff patted and touched her prior to the incident which was to become the subject of this lawsuit, but Ms. Creamer did not report these incidents to the management. Mr. Hoff also made inappropriate comments regarding his own name, Jack Hoff, as well as sexist and racially motivated comments, but the evidence was quite vague as to what those comments were.

On April 24, 1991, Ms. Creamer was filling out forms in the dispatch office next to the drivers' lounge. The dispatcher, Mr. Chapman, was also in the room. Mr. Hoff entered the office, exchanged pleasantries for a few minutes, and then kissed Ms. Creamer on the left cheek. The district court also found there was

> some inappropriate touching by Mr. Hoff. And Ms. Creamer apparently walked around the office with Mr. Hoff not necessarily in pursuit, but Mr. Hoff was also walking around the office. Ms. Creamer felt his conduct was inappropriate and so indicated. Mr. Hoff left the office, and that concludes basically what occurred in the dispatch office.

Ms. Creamer then left the dispatch office and went into the drivers' lounge. Mr. Hoff and several other drivers were in the lounge when Ms. Creamer entered. She confronted Mr. Hoff, telling him she felt he had grabbed her in the dispatch office and that he was not to treat her that way anymore. Mr. Hoff then lifted Ms. Creamer either by the waist or by the wrists onto the pool table and pinned her back against the pool table. Mr. Chapman then entered the drivers' lounge and told Mr. Hoff to stop. Another driver also told Mr. Hoff to "give it a rest." Mr. Hoff released Ms. Creamer and she left the premises, never to return.

Ms. Creamer did not report to work the next morning. The dispatcher called Ms. Creamer at home and asked if she planned to come to work that afternoon. Either during this conversation or a conversation held shortly thereafter, Ms. Creamer told a supervisor what had happened in the dispatch office and the drivers' lounge on the previous day. After talking with Mr. Hoff, the dispatcher telephoned Ms. Creamer and asked her either to come in and discuss the matter with him, Mr. Hoff, and the witnesses, or participate in such a discussion by telephone. Ms. Creamer refused to participate in any discussions with Mr. Hoff and said she wanted Mr. Hoff fired. Ms. Creamer began to cry, and the conversation ended.

Laidlaw began an investigation, but it is unclear whether Mr. Hoff was ever reprimanded. In October 1991, Laidlaw offered to unconditionally reinstate Ms. Creamer's employment with full back pay and seniority, and informed her Mr. Hoff had been terminated for other reasons. Ms. Creamer did not return to Laidlaw, but instead obtained employment elsewhere, "based on her feeling that she was unable or unwilling to become reemployed driving a bus." Laidlaw had a specific policy against sexual harassment throughout the period relevant to this case.

After obtaining a right to sue letter from the Equal Employment Opportunity Commission, Ms. Creamer brought this action against Laidlaw, alleging sexual harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The only incidents of sexual harassment specifically mentioned in the complaint were Mr. Hoff's actions on April 24, 1991. The district court held a

bench trial and entered judgment in favor of Laidlaw. The district court correctly noted this is a hostile work environment case. After discussing, and indeed quoting, the governing cases from this and other courts at some length, the district court stated as follows:

> For this sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the condition of employment, create an abusive environment. Whether it's sufficiently pervasive to create an environment must be determined from the totality of the circumstances.... The Court should consider the harassment unequal treatment based on sex even if the acts are not themselves sexual in nature, which is not the case here.
>
> A discriminatory and abusive environment must affect the employee's work environment so substantially as to make it intolerable for her to continue, and the Court finds this case totally devoid of evidence to support such a contention.
>
> Accordingly, based on the evidence presented, the Court concludes that the plaintiff has wholly failed to present evidence which would be sufficient to sustain a hostile work environment claim....

## II

 Ms. Creamer does not seriously challenge the district court's findings of fact, nor do we see any basis for such a challenge; instead, she contends the district court misapplied the relevant law to those facts. Ms. Creamer contends, and we agree, that an employee may prevail in an action for sexual harassment either if the asserted harassment was "pervasive" or if there was only a single incident of harassment which, standing alone, was sufficiently "severe." *See, e.g., Hirschfeld v. New Mexico Corrections Dept.,* 916 F.2d 572, 575 (10th Cir.1990) ("For sexual harassment to be actionable, it must be sufficiently severe *or* pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." (Citations and internal quotation marks omitted; emphasis added.)). Ms. Creamer states in this case the district court

only recognized the pervasive standard, and determined that [she] had not established the requisite pervasiveness to establish her claims. In that the [district court] failed and/or refused to recognize the alternate standard for establishing liability [*i.e.,* that the asserted harassment, though not pervasive, was severe], it is clear that the [district court] committed error.

In light of this asserted misapplication of the law, Ms. Creamer asks us to remand her case and direct the trial court to consider whether the asserted harassment, though not pervasive, was nevertheless severe. We reject Ms. Creamer's contention. Given the district court's lengthy, thorough, and accurate discussion of the applicable case law, which included actual citations to and quotations from our decisions, we are certain the district court understood the law quite well, and that it independently considered both whether the asserted harassment was pervasive and whether it was severe, and simply concluded it fell short of either standard.

We see no basis for reversing the district court's conclusion the asserted harassment was not pervasive. The only incident specifically cited in the complaint was the incident that occurred on April 24, 1991, namely, Ms. Creamer's confrontation with Mr. Hoff, which began in the dispatcher's office and ended on the pool table in the drivers' lounge a few minutes later. This single incident does not, by any means, amount to pervasive sexual harassment. Furthermore, in light of this record and the district court's factual findings, we find no fault with its conclusion none of the events occurring prior to April 24, 1991 amounted to pervasive or severe sexual harassment.

 Even if we assume for the sake of discussion that the district court erred when it concluded the events occurring on April 24, 1991, were not sufficiently severe, its ultimate conclusion, that Laidlaw is not liable for Mr. Hoff's actions, was nevertheless correct. Laidlaw can be held responsible for the actions of its employee, Mr. Hoff, only (1) if Mr. Hoff was acting "within the scope of his employment," (2) Laidlaw "failed to remedy a hostile work environment brought about by the sexual harassment of which [Laidlaw]

knew or should have known," or (3) Mr. Hoff "acted under apparent authority from [Laidlaw]." *Griffith v. State of Colorado, Div. of Youth Services,* 17 F.3d 1323, 1330 (10th Cir.1994); *see Hirschfeld,* 916 F.2d at 576–80. This case does not fall within category (3). We also see no grounds for liability under category (2). Prior to the time Mr. Hoff harassed Ms. Creamer in Mr. Chapman's presence in the dispatcher's office, the facts as the district court found them do not provide a basis for holding Laidlaw knew or should have known Mr. Hoff was a sexual harasser. Furthermore, liability under category (2) was not triggered when Mr. Hoff began harassing Ms. Creamer in Mr. Chapman's office. The employer incurs liability by recklessly or negligently "failing to remedy or prevent a hostile or offensive work environment of which *management-level employees* knew, or in the exercise of reasonable care should have known." *Hirschfeld,* 916 F.2d at 577 (internal quotation marks and citation omitted; emphasis added). It is doubtful Mr. Chapman, a dispatcher, was a management-level employee. Furthermore, even if he was, he took reasonable steps to remedy the situation by ordering Mr. Hoff to stop harassing Ms. Creamer within only a few minutes after the harassment initially began in his office. Also, a supervisory employee discussed the matter with Ms. Creamer the next day in an effort to investigate, and ostensibly remedy, the situation. In light of these facts, Laidlaw did not act recklessly or negligently. Finally, we see no basis for holding Laidlaw liable under category (1). *See id.* at 576 (explaining the "scope of employment" category is "largely inapposite in sexual harassment cases because sexual harassment simply is not within the job description of ... any ... worker in any reputable business" (internal quotation marks and citation omitted)).

## III

 Ms. Creamer also contends the district court erred in denying her motion to amend her complaint to include certain state law causes of action. "We review a trial court's decision on whether to allow amendment of pleadings for abuse of discretion." *Gillette v. Tansy,* 17 F.3d 308, 312 (10th Cir.1994). "When a court refuses leave to amend, it must state its reasons." *Id.* During the consolidated hearing on Laidlaw's motion for summary judgment and Ms. Creamer's motion to amend the complaint, held on February 11, 1994, the district court observed that (1) the lay witnesses were deposed in late September 1993, lay witness discovery was closed on October 1, 1993, but Ms. Creamer failed to file her motion until November 12, 1993, one and one-half months after discovery cutoff; (2) the court did not know of any reason why the additional claims were not raised before discovery cutoff; (3) the case was set for trial on June 6, 1994; and (4) if the court granted the motion to amend, Laidlaw would file a second summary judgment motion addressing the new claims. The district court also noted Ms. Creamer's attorney, Andrew Brake, "has a proclivity for adding these state claims at the last minute." The reasons stated by the district court, especially Ms. Creamer's unjustified delay, amply support its decision, and we therefore find no abuse of discretion.

## IV

 Finally, Ms. Creamer contends the district court abused its discretion when it excluded the testimony of another Laidlaw employee, Terry Danford. We disagree. Laidlaw asserts in its opposing brief, and Ms. Creamer essentially admits in her reply brief, that Ms. Danford did not start working at Laidlaw until after Ms. Creamer stopped working for Laidlaw, and that, had she been allowed to testify, Ms. Danford would have testified about the conditions at Laidlaw only as they existed after she began working there. Although "evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a claim" of sexual harassment, the plaintiff "may only rely on evidence relating to harassment of which she was aware during the time she was allegedly subject to a hostile work environment." *Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 782 (10th Cir.1995). Ms. Creamer attempts to avoid our holding in *Hirase–Doi* by arguing the work environment was the same during the time she worked for Laidlaw and the

time Ms. Danford worked for Laidlaw. We consider this argument to be specious.

**AFFIRMED.**