**Michael SCHRADER, Plaintiff,**

v.

**E.G. & G., INC., E.G. & G. Rocky Flats, Inc., and Janine Wilson, Defendants.**

**Civil Action No. 95–B–870.**

United States District Court, D. Colorado.

Feb. 7, 1997.

 

Mark S. Bove, Mark S. Bove, P.C., Richard C. LaFond, Charlotte N. Sweeney, Denver, CO, for Plaintiff.

Raymond M. Deeny, N. Dawn Webber, Sherman & Howard, L.L.C., Colorado Springs, CO, for Defendants.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

Plaintiff, Michael Schrader, claims sex discrimination and sexual harassment in violation of 42 U.S.C. § 2000e et seq. (Title VII). In addition, plaintiff asserts a common law claim for outrageous conduct. Defendants, E.G. & G., Inc., E.G. & G. Rocky Flats, Inc. (Collectively, EG & G), and Janine Wilson, move for summary judgment on all claims. The motion is adequately briefed, and oral argument would not materially assist me in deciding it. For the following reasons, I will grant, in part, and deny, in part, defendants' motion.

### I.

The following facts are undisputed or, if disputed, are viewed in a light most favorable to plaintiff. Plaintiff began working at Rocky Flats in 1981. EG & G took over Rocky Flats in 1990. Sometime in the fall of 1991, while plaintiff was working in the communications department, he began a romantic relationship with his second-line supervisor, Janine Wilson. Plaintiff ended the romantic relationship in November 1992. The break-up prompted a series of actions by Wilson. She began going to plaintiff's office on a regular basis to discuss the relationship and how difficult it was for her to move on with her life. Schrader Depo., pp. 62–64. During those discussions, Wilson often became both emotional and angry. *Id.*

Wilson's hostility increased when plaintiff began dating another co-worker, Suzanne Chandler, in early 1993. For example, when Wilson was unable to locate plaintiff after hours, she drove by Chandler's house and found plaintiff's car in the driveway. She called plaintiff at home and left a message on his machine in which she berated him with foul language and stated that "this will be the sorriest day of your life." Schrader Depo., p.

77. At work, Wilson continued to radiate hostility, as she would frequently glare at plaintiff and refuse to speak with him. *Id.* at pp. 70–71. During the summer of 1993, Wilson went to Idaho. Upon her return, however, she continued going to plaintiff's office to tell him that it was difficult for her to see him with another woman. At one point, Wilson told plaintiff that "it wasn't going to be her that left Rocky Flats." Schrader Depo., p. 101.

Plaintiff's supervisor, Roger Miller, noticed Wilson's hostility toward plaintiff and her interest in his personal life. According to Miller, Wilson would routinely quiz plaintiff about his weekend plans, which would make plaintiff visibly upset. Miller Depo. p. 48–49. Miller told plaintiff that, from his observations, he believed Wilson was sexually harassing him. Miller and plaintiff agreed not to file an internal EEO grievance, however, for fear of retaliation from Wilson. Schrader Depo., pp. 80–81; Miller Depo., pp. 22, 27. In addition, Wilson told Mary Amaral, EG & G's director of human resources, about her previous relationship with plaintiff. Amaral Depo., p. 27. Amaral did not investigate the situation further at that time, and she did not advise Wilson to stop evaluating plaintiff's performance. *Id.* at 111–12.

In early 1994, Wilson was informed that Chandler was renting her own video camera to EG & G through a consignment agreement with a third-party. Wilson began an investigation, which eventually included plaintiff. As a result of that investigation, investigators discovered that plaintiff had inaccurately filled out a time card in August 1993 and that he engaged in business ventures outside of work. According to Amaral, falsification of a time card constitutes grounds for immediate termination. Amaral Depo., p. 178.

During the investigation, Miller told Amaral of what he considered Wilson's harassment of plaintiff. Amaral told him that it was not the first complaint they had heard regarding Wilson. No investigation was conducted into the matter, however. Miller Depo., pp. 68, 90, 156.

By a memo signed by Wilson, plaintiff was suspended on March 18, 1994, for (1) using government equipment for personal business, (2) falsification of time cards, and (3) conflict of interest. Pltf.Ex. 2. Plaintiff was terminated on April 19, 1994. The termination was based upon a notice of reprimand signed by Wilson. Pltf.Ex. 4. The reprimand stated that plaintiff was being fired for (1) falsifying his time card on August 16, 1993, (2) failing to accomplish goals during the week of October 11, 1993, and (3) failing to disclose private enterprises in compliance with EG & G policies.

Plaintiff contends that the representations he made on his time card were justified. Miller was aware that he would be taking three days off that week, and Miller routinely allowed employees to take compensatory time. Miller Depo., pp. 34, 71. Because plaintiff was working long hours during that period, he considered his time card accurate.

One week before the suspension, Miller told plaintiff that he was the subject of a "witch hunt." Miller is not aware of any viable reason to fire plaintiff. Rather, he believes that plaintiff's termination was directly tied to his refusal to continue his relationship with Wilson.

## II.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial.

*Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

If a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper and there is no need for a trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. When the moving party is the defendant, the operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12; *Mares,* 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White,* 45 F.3d at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

### III.

■ Plaintiff asserts the following claims: (1) sex discrimination under Title VII; (2) sexual harassment (*quid pro quo* and hostile work environment) under Title VII; and (3) outrageous conduct. The Tenth Circuit has recently held that Title VII does not impose liability upon individual defendants. *Haynes v. Williams,* 88 F.3d 898 (10th Cir.1996). Accordingly, I will grant summary judgment on plaintiff's claims for sex discrimination

and sexual harassment against Wilson, individually. For the following reasons, I will also grant summary judgment on plaintiff's claims for sex discrimination and outrageous conduct against all defendants.

#### A. *Sex Discrimination*

Title VII prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1)(1982). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a three-part paradigm for evaluating disparate treatment claims under Title VII. First, the plaintiff must establish a prima facie case of discrimination. Second, if the plaintiff carries his initial burden, the burden of persuasion shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged actions. Third, if the defendant carries his burden, the plaintiff has an opportunity to prove that the reasons articulated by the defendant are "pretext" for discrimination. *Id.* at 802, 93 S.Ct. at 1824.

Typically, to establish a prima facie case, a plaintiff must demonstrate that: (1) he belongs to a protected group; (2) he was performing satisfactorily; (3) he was subject to an adverse employment decision; and (4) other employees of similar qualifications who were not members of the protected group were treated more favorably. *See Id.; Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In the absence of a nondiscriminatory explanation by the defendant, the plaintiff is entitled to a presumption of discriminatory intent upon the showing of the prima facie elements. The Tenth Circuit, however, has altered the elements of a prima facie case for actions involving "reverse discrimination." *Notari v. Denver Water Dep't,* 971 F.2d 585 (10th Cir.1992).

■ In a reverse discrimination action, a plaintiff can establish a prima facie case in one of two ways. First, a plaintiff can establish a prima facie case under a modified

version of the *McDonnell Douglas* formula. *Id.* at 589. In that instance, the first element of the traditional prima facie case (that the plaintiff belongs to a protected group) is replaced. *Id.* In lieu of that element, a plaintiff must "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id.*

■ Alternatively, a plaintiff claiming reverse discrimination may establish a prima facie case by presenting "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Id.* at 590. It is not sufficient under this alternative formulation for a plaintiff to allege that a person of similar qualifications was the beneficiary of a challenged employment decision. *Id.* Rather, the plaintiff must present evidence supporting a reasonable inference that, in effect, the defendant's discrimination was the actual reason for the challenged decision. *Id.* The standard for a prima facie case under either formulation is higher than for a normal discrimination case because a reverse discrimination plaintiff is not entitled to the same presumption of discrimination as a member of a traditionally disadvantaged group. *Id.* at 589.

■ Plaintiff is male. Therefore, his sex discrimination case is subject to the strictures of *Notari.* Defendants argue that there is no evidence they either (1) are one of those unusual employers who discriminates against men or (2) discriminated against plaintiff because he is male. In addition, defendants contend that there is no evidence that he was treated less favorably than similarly situated women. Therefore, defendants argue, plaintiff has not met his burden to establish a prima facie case of sex discrimination. I agree.

This is a sexual harassment case. There is simply no evidence to support a claim that defendants either discriminated against men in general or treated plaintiff less favorably because he is a man. Further, there is no evidence suggesting that any similarly situated women were treated more favorably than

plaintiff. Rather, the evidence allows only the inference that plaintiff was treated less favorably than others because he refused to continue his relationship with Wilson. Because the category of "men who have had a relationship with Janine Wilson" is not a protectable class under Title VII, however, plaintiff cannot maintain a disparate treatment claim for sex discrimination. Accordingly, I will grant defendants' motion on this claim.

### B. *Sexual Harassment*

■ Plaintiff also claims sexual harassment. Two distinct types of sexual harassment are recognized under Title VII: *quid pro quo* and hostile work environment. A harassment claim may be based upon acts by an employer that single out an employee, so long as the employee is singled out because of his sex. For example, for hostile work environment claims, "Title VII creates an individual claim which is ripe before the work environment has been poisoned for all workers of one sex or the other.... It does not require that the work environment be hostile to all workers of plaintiff's sex; it requires that the environment be hostile to the plaintiff." *Gerd v. United Parcel Service, Inc.,* 934 F.Supp. 357, 360–61 (D.Colo.1996) (quoting *Tanner v. Prima Donna Resorts, Inc.,* 919 F.Supp. 351, 354 (D.Nev.1996)) (internal quotes omitted). For the following reasons, I will deny defendants' motion for summary judgment on plaintiff's claims for both types of sexual harassment.

### 1. *Quid Pro Quo* Sexual Harassment

■ *Quid pro quo* harassment occurs when tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and adverse job consequences result from the employee's refusal to submit to the conduct. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1414 (10th Cir.1987). To establish a prima facie case of *quid pro quo* sexual harassment, plaintiff must show that: (1) Wilson made intentional sexual advances; (2) the sexual advances were unwelcome; (3) the acceptance or rejection of the sexual harassment constituted an expressed or implied condition of the job benefit or the impo-

sition of a tangible job detriment; and (4) his reaction to Wilson's advances, in fact, affected a tangible aspect of employment. *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783–84 (1st Cir.1990); *Henson v. City of Dundee,* 682 F.2d 897, 908 n. 18 (11th Cir.1982).

Genuine issues of fact preclude summary judgment on this claim. For example, viewing the evidence in a light most favorable to plaintiff, Wilson made it clear that she wanted to continue her intimate relationship with plaintiff and that "it wasn't going to be her [who] left Rocky Flats." *See, e.g.,* Schrader Depo. pp. 62, 101; Miller Depo., pp. 49, 153; Wilson Depo., pp. 113, 152. A reasonable fact finder could infer from this evidence that Wilson thereby threatened to have plaintiff fired if he did not resume their relationship. Plaintiff resisted Wilson's advances, and he was fired.

Defendants set forth three arguments why summary judgment is appropriate in spite of this evidence. Deft.Br. at 22–23. First, defendants argue that Wilson had nothing to do with plaintiff's termination. Viewing the evidence most favorably for plaintiff, however, I cannot agree. Wilson signed both plaintiff's suspension papers and his discharge papers. Pltf.Ex. 2, 4. She initiated the investigation that *culminated in plaintiff's discharge,* and she was a member of the management group that decided to fire plaintiff. Wilson Depo., pp. 263, 295. Defendants contend that Wilson had little actual power in the decision-making process, but that is a question for the jury.

Second, defendants argue that plaintiff was fired for reasons wholly independent from plaintiff's relationship with Wilson—namely, his alleged falsification of time cards. Defendants contend that because they had a legitimate, nondiscriminatory reason for discharging plaintiff, they cannot be liable under Title VII for the discharge. In support of this argument, defendants cite *Swanson v. Elmhurst Chrysler–Plymouth, Inc.,* 882 F.2d 1235, 1237, 1239 (7th Cir.1989). *Swanson,* however, is inapposite.

In *Swanson,* the trial court decided, *after a bench trial,* that although the plaintiff had been sexually harassed, her discharge was not causally connected to that harassment.

*Id.* The Seventh Circuit held that it could not disturb that factual finding on appeal. *Id.* Thus, *Swanson* was not decided in a summary judgment context. I agree that if there is no causal connection between Wilson's alleged harassment of plaintiff and his discharge, he cannot recover under Title VII for damages arising from his discharge. I cannot make that determination as a matter of law, however.

Plaintiff has presented sufficient evidence that a reasonable juror could find a causal connection between his discharge and Wilson's alleged harassment. Wilson was involved in both plaintiff's suspension and his termination. *See, e.g.,* Pltf.Ex. 2, 4; Wilson Depo., pp. 263, 295. Plaintiff's supervisor, Miller, routinely allowed employees to take compensatory time for additional hours worked, and Miller approved plaintiff's request to be absent during the three days in question. Further, Miller could not recall any time that plaintiff falsified his time card. Miller Depo., pp. 34, 71. Rather, Miller stated that Wilson was the subject of a "witch hunt" and he was fired because he did not want to continue his relationship with Wilson. Schrader Depo., p. 119; Miller Depo., p. 51. Therefore, a reasonable juror could infer that plaintiff would not have been fired for the discrepancy in his time cards had it not been for Wilson's harassment, and I will not grant summary judgment on this basis.

■ Defendants' final argument is that plaintiff cannot maintain a sexual harassment claim based upon acts spurred by plaintiff's status as Wilson's former lover rather than his gender. Specifically, defendants cite *Keppler v. Hinsdale Township High School,* 715 F.Supp. 862 (N.D.Ill.1989). There the court held that plaintiff could not maintain a *quid pro quo* sexual harassment claim when the allegedly discriminatory acts were based upon plaintiff's status as the harasser's former lover, not her gender. After breaking up with the plaintiff, a teacher, the principal of the defendant school embarked on a campaign to denigrate plaintiff in the eyes of the superintendent. The court held that because the principal merely held a grudge from the breakup of the former relationship, he was not discriminating based upon sex as re-

quired by Title VII. I decline to follow *Keppler*.

In specifically rejecting the *Keppler* analysis, *Babcock v. Frank*, 729 F.Supp. 279, 287 (S.D.N.Y.1990), stated that "to assume as a matter of law that the latter [conditioning benefits on the continuation of a relationship] is discrimination predicated not on the basis of gender, but on the basis of the failed interpersonal relationship is as flawed a proposition under Title VII as the corollary that 'ordinary' sexual harassment does not violate Title VII when the employer's asserted purpose is the establishment of a new interpersonal relationship." *Id.* at 288. I agree. As discussed, plaintiff has presented sufficient evidence to create a genuine issue whether he was discharged because he would not continue his relationship with Wilson, and I conclude that his prior consensual relationship with Wilson does not change the analysis under Title VII. Accordingly, I will deny defendants' motion for summary judgment on plaintiff's claim for *quid pro quo* sexual harassment.

2. Hostile Work Environment

"[H]ostile work environment harassment arises when sexual conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Hicks v. Gates Rubber Company*, 833 F.2d 1406, 1413 (10th Cir.1987) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986)). There is no "mathematically precise test" to determine whether an environment is "hostile" or "abusive" under Title VII. *Harris v. Forklift Systems*, 510 U.S. 17, 22–23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). The standard is an environment that would reasonably be perceived, and is perceived, as hostile or abusive. *Meritor Savings Bank*, 477 U.S. at 67, 106 S:Ct. at 2405–06. Isolated or trivial episodes of harassment are insufficient to satisfy this standard. *Id.* at 65, 106 S.Ct. at 2404–05. A court must look to the totality of the circumstances to determine whether the alleged conduct is sufficiently pervasive to create a hostile environment. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir.1987).

The factors that may be considered include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 22–23, 114 S.Ct. at 371. Actual psychological harm to the plaintiff is not required. *Id.* A single incident, if sufficiently severe, will support a finding of hostile work environment. *Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 170 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 437, 136 L.Ed.2d 335 (1996).

An employer is not liable for hostile work environment except under agency principles. *Hirschfeld v. New Mexico Corrections Dep't*, 916 F.2d 572, 576–79 (10th Cir. 1990). Accordingly, employer liability for sexual harassment may attach if (1) the harassers were acting within the scope of their employment, (2) the employer failed to remedy a hostile environment of which it knew or should have known, or (3) the harassers acted under apparent authority from the employer or were aided in accomplishing the harassment by their relationship with the employer. *Id.*

Defendants argue that plaintiff cannot maintain his claim for hostile work environment because: (1) the alleged harassment was not based upon plaintiff's gender; (2) the alleged harassment was not pervasive or severe enough to create a hostile work environment; and (3) plaintiff did not file a formal grievance against Wilson with the EG & G EEO office. I am not persuaded.

Again, defendants' *Keppler* argument that Wilson's harassment of plaintiff was not based upon his gender is unpersuasive. As to defendants' second argument, plaintiff has presented sufficient evidence to create a genuine issue of fact whether Wilson's conduct was pervasive enough to create a hostile work environment. A hostile work environment may be created by conduct that is not of a sexual nature, so long as the conduct is sufficiently pervasive and would not occur but for the sex of the employee.

*Hicks,* 833 F.2d at 1415. Viewing the evidence most favorably to plaintiff, Wilson's conduct created a hostile work environment.

Plaintiff presents evidence that: (1) Wilson came to his office to complain and/or berate plaintiff about their former relationship on a weekly basis; (2) Wilson called his house and left an obscene and angry message on his answering machine when she discovered plaintiff's car in Chandler's driveway; (3) Wilson ignored or was rude to plaintiff at work; (4) plaintiff was visibly upset on occasions following Wilson's conduct. Schrader Depo., pp. 38, 70, 77; Miller Depo., p. 48. Looking at the totality of the circumstances, a reasonable juror could find that plaintiff's work environment could reasonably be perceived and was perceived by plaintiff as abusive or hostile. Accordingly, summary judgment is inappropriate.

■ Finally, defendants contend that because plaintiff did not file a formal grievance with the EG & G EEO department, he is precluded from bringing a hostile work environment claim. As I understand their argument, defendants contend that plaintiff's failure to complain formally is dispositive for two reasons. First, it is evidence that the working conditions simply were not that hostile or abusive. Second, it proves that EG & G cannot be liable because it neither knew nor should have known of the alleged harassment. I disagree.

First, although plaintiff's decision not to file a formal complaint with the internal EEO department may be a factor to be considered by the jury, it is not dispositive of whether plaintiff's work environment was sufficiently hostile to support a claim. Many factors could have contributed to plaintiff not filing a grievance, including whether plaintiff was concerned about retaliation. Miller Depo., p. 27. I cannot engage in that type of fact finding at the summary judgment stage.

Similarly, although plaintiff's decision not to file a formal complaint may be a factor relevant to whether EG & G can be liable under agency principals for Wilson's conduct, genuine issues of fact remain whether EG & G knew about or should have known about Wilson's alleged harassment of plaintiff. Miller, for instance, was plaintiff's supervisor, and he admits to knowing of both Wilson's conduct and its effect on plaintiff. Miller Depo., pp. 48–51. Accordingly, I will deny summary judgment on plaintiff's claim for hostile work environment.

### C. *Outrageous Conduct*

■ Plaintiff's final claim is for outrageous conduct. It is well-settled under Colorado law that discharge from employment, without more, is not outrageous conduct. *Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 384 (10th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989). At the same time, an employer is not shielded from employee claims of outrageous conduct. "Thus, the *manner* of discharge, and the employer's conduct is critical to a finding of outrageous conduct." *Id.* at 385. In Colorado, liability for the tort of intentional infliction of emotional distress may be found only where "the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 383 (quoting *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970)).

■ The "defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp,* 854 F.2d at 383. However, "conduct otherwise permissible may become extreme and outrageous if it is an abuse by an actor of a position in which she has actual or apparent authority over the other, or the power to affect the other's interests." *Weiszmann v. Kirkland and Ellis,* 732 F.Supp. 1540 (D.Colo.1990). While the jury determines the ultimate question of whether conduct is outrageous, the court must decide in the first instance whether reasonable persons could differ on the conduct being outrageous. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo.1988).

■ Even viewing the facts most favorably to plaintiff, I conclude that reasonable jurors could not find defendants' conduct extreme and outrageous under the high stan-

dard set forth by *Rugg.* Although plaintiff presented sufficient evidence to create a genuine issue of fact whether he was sexually harassed, none of Wilson's or EG & G's actions, singly or together, could reasonably considered to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Rugg,* 476 P.2d at 756. Accordingly, I will grant defendants' motion for summary judgment on plaintiff's outrageous conduct claim.

Accordingly, it is ORDERED that:

1. Defendants' motion for summary judgment on plaintiff's claim for sex discrimination is GRANTED, and that claim is DISMISSED;

2. Defendants' motion for summary judgment on plaintiff's claim for sexual harassment is GRANTED to the extent that plaintiff's claim is DISMISSED as against defendant Wilson, and the motion is DENIED in all other respects;

3. Defendants' motion for summary judgment on plaintiff's claim for outrageous conduct is GRANTED, and that claim is DISMISSED.