**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TINA JESSEN,

      Plaintiff-Appellant,

v.

BRUCE BABBITT, Secretary, United
States Department of the Interior;
BUREAU OF LAND
MANAGEMENT,

      Defendants-Appellees.

No. 98-8069
(District of Wyoming)
(D.C. No. 97-CV-289-J)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McWILLIAMS,** and **MURPHY**, Circuit Judges.

I. INTRODUCTION

    Tina Jessen sued her employer, the Bureau of Land Management ("BLM"),

claiming co-worker and defendant Wally Stiles created a sexually hostile work

environment which the BLM failed to remedy in violation of Title VII of the 1964

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Civil Rights Act. The district court granted the BLM motion for summary judgment on two alternative grounds: (1) Jessen did not produce sufficient evidence upon which a reasonable jury could find the existence of a hostile work environment under Title VII; and (2) she failed to demonstrate that the BLM knew or should have known of Stiles' alleged harassment, thus absolving her employer of Title VII liability. Jessen appeals the district court's grant of summary judgment, asserting that these two conclusions were error. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291, **reverses** the grant of summary judgment, and **remands** for further proceedings.

## II. BACKGROUND[1]

From 1993 to August of 1995, Tina Jessen was employed by the Wyoming State Office of the BLM as a Supervisory Land Records Specialist. Her duties included collecting and converting certain databases. Wally Stiles worked as the BLM's State Data Administrator and was in charge of quality assurance over databases. Stiles did not, however, function as Jessen's supervisor.

In the Spring of 1994, Jessen advised Stiles and management not to certify the Legal Land Description Database ("the database"), because she believed it

---

[1] The following background discussion reflects this court's view of the facts in a light most favorable to Jessen, the party opposing summary judgment. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

was substantially inaccurate. Contrary to Jessen's recommendation, Stiles certified the database. The Washington D.C. Office of the BLM then rejected the certification of the database due to the numerous inaccuracies it contained. Stiles responded by blaming Jessen, claiming she never informed him of the errors. Additionally, Stiles began to physically intimidate Jessen and engage in other hostile conduct which Jessen alleges was motivated by his animus toward her as a woman.

On June 23, 1995, after consulting a BLM personnel manager, Jessen filed an informal grievance documenting numerous work related complaints and requesting reassignment to a position of equal grade and salary which would not require any contact with Stiles. The BLM, however, did not grant Jessen's reassignment request. Stiles' harassment only escalated after she filed that grievance.

In August of 1995, as part of a state-wide reorganization of the BLM, Jessen became a land records specialist, which required her continued interaction with Stiles. In September, she filed a formal grievance restating her prior complaints and again requesting a job reassignment involving no contact with Stiles. In January of 1996, the BLM notified Jessen that she would be reassigned to a computer assistant position in the Division of Minerals and Lands. In part because that job also entailed contact with Stiles, Jessen filed another informal

grievance objecting to the reassignment. After the BLM denied her objection, Jessen filed a formal grievance in March of 1996. Nonetheless, the BLM transferred Jessen into the new position in March. Finally, in November of 1996, Jessen filed an EEO complaint alleging sexual harassment by Stiles.

On December 5, 1997, in the United States District Court for the District of Wyoming, Jessen sued Bruce Babbit, the United States Department of the Interior, and the BLM (collectively "the BLM"), and Stiles individually for violating Title VII of the Civil Rights Act of 1964. The BLM then filed a motion for summary judgment, which the district court subsequently granted. Jessen now appeals the district court's order granting summary judgment in favor of the BLM.

III. ANALYSIS

This court reviews *de novo* a district court's grant of summary judgment, applying the same legal standard utilized by the district court. *See Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, this court views the evidence and draws reasonable inferences

therefrom in a light most favorable to the non-moving party. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

A. The Existence of a Hostile Work Environment

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In *Meritor Savings Bank, FSB v. Vinson*, the United States Supreme Court held that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." 477 U.S. 57, 66 (1986). The Court then stated that for a hostile work environment claim to be actionable, the sexual harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 67 (quotation omitted).

Later, in *Harris v. Forklift Systems, Inc.*, the Court established a two-element test which a plaintiff must satisfy to demonstrate that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create a hostile environment: (1) the harassing conduct must be "severe or pervasive

enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive;" and (2) the plaintiff must "subjectively perceive the environment to be abusive." 510 U.S. 17, 21 (1993). Furthermore, the Court instructed that in analyzing a claim under these two elements, courts must look at all relevant circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Therefore, to survive the BLM summary judgment motion on this issue, Jessen was required to submit sufficient admissible evidence upon which a reasonable jury could find that Stiles had created both an objectively and subjectively sexually hostile work environment. *See Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998). This court has noted "that the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (quotations omitted).

In first analyzing the objective element, this court's review of the admissible evidence presented to the district court at the summary judgment stage leads to the conclusion that a reasonable jury could find that Stiles had created a sexually hostile work environment. According to Jessen's deposition and

affidavit, Stiles routinely physically intimidated Jessen by blocking her path as she attempted to walk down hallways, through doors, in and out of elevators, and out of her cubicle, and by directing hostile facial expressions and body language toward Jessen. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987) (noting that "'if a supervisor consistently uses physical force toward an employee because of that employee's sex, the use of such force may, if pervasive enough, form an illegal condition of employment.'" (quoting *McKinney v. Dole*, 765 F.2d 1129, 1138-39 (D.C. Cir. 1985) (quotations omitted)). Although Stiles' physical intimidation of Jessen may not appear on its face to be related to his attitudes about gender or sex, Jessen presented sufficient other evidence of Stiles' animus toward women to raise the reasonable inference that his physical intimidation of her was motivated by gender-based hostility. *See id.; O'Shea*, 185 F.3d at 1097 ("Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct."). Jessen's affidavit relates an incident in which Stiles stood at a desk near Jessen's and in a deliberately loud voice described how he used to look up a teacher's dress and down her blouse. Furthermore, Jessen testified in her deposition that Stiles, in direct conversation with her, referred to co-workers

Phyllis Stone as a "stupid bitch," and to Nancy Hite as "a dumb bitch," and "a stupid fucking cunt."

Additionally, Jessen may utilize evidence of Stiles' conduct toward other women to demonstrate his discriminatory intent. *See Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) (holding that testimony by other employees about the defendant's mistreatment of them based on age was relevant to the issue of discriminatory intent in a Title VII age discrimination case); *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995) (holding that evidence of the defendant employer's harassment of other women is admissible in a sex discrimination case because such evidence bears on the defendant's discriminatory intent). Affiant Nancy Hite stated that in August of 1995 she heard Stiles call Jessen "stupid fucking cunt," "dumb fucking bitch," and "stupid bitch." Hite further stated that she too experienced Stiles' physically intimidating and sexually offensive behavior, such as his pushing up against and groping her body and blocking her path. Three other female co-workers also submitted affidavits which provide evidence of Stiles' animosity toward women: Sue Moberly termed Stiles' behavior toward women as "abrasive," "hot-tempered," "intimidating," "impliedly violent," and different than his treatment of men; Diane O'Meara stated that Stiles "suggested I was a 'lesbian' because of my interest in outdoor sports" and that "his conduct was specifically directed towards

-8-

women;" and Sherry Latham described observing Stiles' "hostile and intimidating conduct." The totality of this evidence suggests that Stiles harbors an intense hostility toward women such that a reasonable jury could infer his physical intimidation of Jessen was motivated by his animus toward her as a woman.

Moreover, in determining whether an objectively hostile work environment existed, this court may consider any admissible evidence of the above-described conduct directed toward other women, if Jessen was aware of that conduct. *See Hirase-Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995); *Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 171 (10th Cir. 1996). "[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere therefore–as well as evidence of specific hostility directed toward the plaintiff–is an important factor in evaluating the claim." *Hicks*, 833 F.2d at 1415. According to Jessen's affidavit and deposition, she personally observed Stiles harass other female workers.[2]

---

[2] Jessen also asserts that she learned of further opprobrious conduct and comments exhibited and made by Stiles when co-workers told her about this behavior. The BLM contends that such evidence is inadmissible hearsay. Indeed, "[i]t is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross v. Burgraff Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). This court need not rely on this further evidence, however, to conclude that Jessen created a material issue of fact as to whether a hostile work environment existed. Therefore, we decline to determine the admissibility of this or any other evidence proffered by either party but not

Jessen provided further evidence of an objectively hostile work environment when she testified that the BLM personnel manager Gordon Schaeffer acknowledged to her that Stiles treated her in a more hostile manner because she is a woman.[3] Finally, the negative impact of Stiles' behavior on some of these women's work performance further evidences the severity of the hostile work environment: Hite alleged that she sought Workers' Compensation benefits for stress and took disability retirement due to Stiles' treatment of her; O'Meara stated, "Substantially as a result of Wally's conduct I decided to retire from the BLM when I was eligible." *See Harris*, 510 U.S. at 23 (listing as a relevant factor whether harassing conduct unreasonably interfered with work performance). In sum, evidence which Jessen presented of Stiles' ongoing physical intimidation of her, his description of ogling a female teacher, his references to women in gender-based, derogatory terms, his physically intimidating and sexually offensive conduct toward other female employees, the detrimental impact which this behavior had on the women, and management's acknowledgment of this behavior creates a genuine issue of material fact as to

---

referenced in this opinion. Those decisions are better left to the trial court on remand.

[3] Schaeffer's statement to Jessen would not constitute hearsay because it qualifies as an admission by a party opponent pursuant to Fed. R. Evid. 801(d)(2)(D).

whether a reasonable person would find such a work environment sexually hostile.

Under the subjective element, Jessen also presented sufficient evidence for a fact finder to conclude that she personally felt Stiles had sexually harassed her by creating a hostile work environment. The Supreme Court has held that to prevail on this element, a plaintiff need not demonstrate psychological injury. *See id.* at 22. Nonetheless, Jessen stated in her affidavit that Stiles' behavior "upset [her] mentally, emotionally and physically on a daily basis" and that she sought work related benefits and medical and psychological care due to Stiles' harassment. Furthermore, this court has held that the subjective element "does not require that [the plaintiff] quit or want to quit" her job. *Davis*, 142 F.3d at 1341. Jessen instead requested a transfer to a job assignment which would not involve any contact with Stiles, though the BLM did not honor that request. Additionally, her complaining about Stiles' behavior to the personnel manager and subsequent filing of grievances further evidences that she subjectively perceived the work environment as sexually abusive. Thus, based on this evidence, a reasonable jury could find that Jessen felt subjected to a hostile work environment because of her sex.

In opposing the BLM's summary judgment motion, Jessen presented sufficient admissible evidence upon which a rational jury could find the existence

of both an objectively and subjectively hostile work environment because of sex. Therefore, because a genuine issue of material fact exists regarding both of these elements, the district court erred in granting summary judgment in favor of the BLM on this issue.

B.  Employer Liability

Under Title VII, an employer may be held liable for hostile work environment sexual harassment committed by one employee against another if the employer negligently or recklessly failed to respond to the harassment.  *See Hirschfeld v. New Mexico Corrections Dep't*, 916 F.2d 572, 577 (10th Cir. 1990). "This liability attaches when a plaintiff establishes that an employer had actual or constructive notice of the hostile work environment and failed to respond adequately to that notice."  *Davis*, 142 F.3d at 1342.  In granting summary judgment in favor of the BLM, the district court concluded that the BLM could not be held liable even if a hostile work environment existed because the BLM lacked notice that any such harassment was occurring.  Jessen contends that this conclusion was erroneous.[4]

---

[4]  The district court *sua sponte* raised this basis for granting summary judgment in its summary judgment order.  The BLM's motion for summary judgment argued only that the undisputed facts failed to demonstrate the existence of a sexually hostile work environment but never discussed employer liability. The district court in its summary judgment order and both parties in their briefs

For purposes of Title VII, an employer is deemed to be on notice of a hostile work environment if management level employees know about the alleged harassment. *See Hirschfeld*, 916 F.2d at 577. In asserting that it never had notice of the alleged harassment, the BLM focuses on the various informal and formal grievances which Jessen filed. The BLM correctly points out that none of these grievances explicitly or implicitly mentioned sexual harassment and none even referenced the events discussed above which may prove the existence of a sexually hostile work environment. Nonetheless, Jessen states in both her affidavit and deposition that prior to drafting and filing her June 1995 informal grievance she orally complained to the BLM personnel manager Gordon Schaeffer about Stiles' harassment. According to her testimony, Schaeffer even agreed that Stiles would not treat Jessen in such a fashion if she were a man.[5] Jessen testified further that Schaeffer instructed her to omit from the informal grievance any reference to sexual harassment or the events constituting the

on appeal do not address the second element in the employer liability test – whether the BLM adequately responded to the harassment. Because that issue is not raised on appeal and because Jessen never received an opportunity to respond at the summary judgment stage to the question of employer liability, this court will not consider whether the BLM adequately responded to the alleged harassment.

[5] Both Jessen's statements to Schaeffer and his response to her are admissible, because Jessen is not offering these statements to prove the truth of the matter asserted, but merely to show that the statements were made, thus demonstrating notice. *See* Fed. R. Evid. 801(c); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995).

alleged harassment. Additionally, Jessen presented evidence that she also complained about Stiles' behavior to supervisors Jerry Jessen and Tom Enright and they too acknowledged the sexually discriminatory nature of Stiles' conduct. This testimony creates a material issue of fact whether the BLM was on actual notice of the alleged harassment.[6] *See EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir. 1989) (concluding that employer can be held liable for sexual harassment committed by one employee against another when the general manager of the employer had actual knowledge of the harassment because the victim had complained about it to him); *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1016 (8th Cir. 1988) (holding employer liable because construction foreman had actual knowledge of sexual harassment of female employees due to their complaints to him and his observing some incidents of harassment). Therefore, the district court erred in granting summary judgment to the BLM on the grounds that it lacked notice of Stiles' alleged harassment.

---

[6] Jessen further asserts that the BLM was on notice of the alleged harassment pursuant to Restatement (Second) of Agency § 219(2)(d). *See Harrison v. Eddy Potash*, 112 F.3d 1437, 1450 (10th Cir. 1997) (holding that under section 219(2)(d) an employer may be liable if the harassing supervisor "has actual or apparent authority to control the victim's working environment, and is aided in harassing the victim by that authority"). Because this court concludes that a material issue of fact exists regarding the question of actual notice, we need not address this additional notice argument.

IV.  CONCLUSION

In opposition to the BLM's motion for summary judgment, Jessen presented sufficient admissible evidence to create genuine issues of material fact whether a sexually hostile work environment existed and whether the BLM had notice of the alleged harassment.  This court therefore **REVERSES** the grant of summary judgment and **REMANDS** to the United States District Court for the District of Wyoming for further proceedings consistent with this opinion.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge