Janet **DAVIS**, Plaintiff,

v.

**UNITED STATES POSTAL SERVICE**, Defendant.

**Civil Action No. 95–WY–1421–AJ.**

United States District Court,
D. Colorado.

July 11, 1996.

John F.X. McBride, Hart &, Trinen, Denver, CO, John Joseph Zodrow, Denver, CO, for plaintiff.

William G. Pharo, United States Attorney's Office, Civil Division, Denver, CO, for defendant.

## ORDER GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW

ALAN B. JOHNSON, Chief Judge, sitting by designation.

This matter comes before the Court on the motion of the defendant for judgment as a matter of law, which was argued by the parties at the end of the plaintiff's case-in-chief. The motion seeks dismissal of the plaintiff's claims arising out of her employment with the United States Postal Service ["USPS"]. The plaintiff has proceeded to trial on Claims 1, 4 and 11 of her complaint after entry of summary judgment and dismissal of all other claims. Plaintiff has asserted that she is entitled to relief for injury caused by intentional discrimination in the terms and conditions of her employment on the basis of handicap (major depression); sexual harassment; and retaliation. The Court will grant the motion for judgment as a matter of law, dismissing this case and discharging the jury.

## BACKGROUND

Janet Davis was a full time career employee of the USPS. She worked as a postal training technician at the Postal Education and Development Center ["PEDC"] in Denver, Colorado. In August, 1990, she had worked as a training technician for eight years when she was approached by a telephone call to her home from Postal Inspector, Donald Fox, who arranged a meeting between Davis and Fox at a local restaurant. Fox's partner, Inspector Lemke, also attended this meeting. The Inspectors initiated discussion with Davis seeking her assistance as a confidential informant supporting the efforts of USPS to identify, prosecute and remove from postal service employment persons who were trafficking in controlled substances. In December, 1990, despite grave

concerns on the part of Davis, reluctantly she agreed to act as a confidential informant.

A key element of the agreement of Davis and Fox included her belief that her identity would be shielded not only from the targets of the drug investigations, but also from all others at the workplace. Inspector Fox informed her that her identity would only be revealed in the unlikely event that any of the targeted employees would elect to have their cases tried or in the event that disclosure of her identity would be directed during an employment arbitration action.

Just as predicted by Inspector Fox, Janet Davis proved to be an effective informant. By June, 1991, arrest warrants were executed. Through Davis, three cases involving cocaine delivery by postal service employees were successfully prosecuted in state courts and, as stated by Inspector Fox, the defendants pleaded to the charges. Two of the employees also relinquished their employment with the USPS. The third employee, Fitzwater, elected to contest his employment termination action and with the support and assistance of the very same union that included Janet Davis as a member proceeded to seek aggressively the identity of the confidential informant. Davis's identity was ordered disclosed by the arbitrator. Davis was devastated by this information. It seemed that the April, 1992 arbitrator's order was to require formal disclosure of her identity and subject her to interviews concerning her clandestine activities on behalf of her employer.

At the time of the arrest of the employees, Davis was moved to Des Moines, Iowa for several weeks on a temporary assignment to divert attention from her within her usual workplace. When she returned to Denver in August, 1991, Inspector Fox continued to share Davis's concern not only for possible abuse from fellow employees at PEDC, but also for her physical safety. Arrangements were made to place Davis in a temporary job with the communications section at the USPS headquarters at Park Place in Denver. Although the communications office was staffed and budgeted for two persons, Mr. Budny and Mr. Turner, employees from other parts of the USPS would receive temporary assignments to communications. This was often arranged where an employee was receiving workers' compensation for a job-related condition and could not yet return to work in his or her section.

Janet Davis was assigned to communications for an extended period of up to one year. Although Davis continued to feel fear and shunning from her workplace at PEDC, she felt safe at communications and found that she enjoyed the work immensely. Mr. Turner and Mr. Budny were well satisfied with her work, even though in April, 1992, they noticed that she would become very upset at work as she learned that her identity would be disclosed to Fitzwater.

During the plaintiff's employment at communications, another employee by the name of McMullin was also assigned to communications while his shoulder condition was being evaluated by workers' compensation. He possessed skill as a photographer which could be put to use in the communications section. McMullin soon targeted Janet Davis for his unwelcome attentions. Through the fall of 1991 he would hug her and occasionally kiss her at work. No one witnessed this conduct except Davis and she mentioned it to no one. However, in early March, 1992, the supervisor, Mr. Budny, walked by as McMullin gave Davis a sort of sideways hug. Budny immediately counselled McMullin that his conduct was unacceptable. That did not deter McMullin, who, according to the plaintiff, stated to her almost immediately after his counselling that "you know you love it." The next day, McMullin assaulted Davis by pressing against her and making pelvic thrusts. This time the plaintiff complained to Mr. Turner, her immediate supervisor at communications. Turner took the matter to Budny and within a short time, both Turner and Budny went to the Equal Employment Opportunity ("EEO") counsellor, Ms. Kadison, who asked them to send Davis to her for interview and counselling. After counselling with Davis, Kadison briefly discussed the matter with Budny and informed him that she would handle the situation informally. Within four days, McMullin was assigned away from communications and any further contact with Janet Davis.

The proverbial "final straw" for Janet Davis was when she was informed by "buck slip" that her one year assignment at communications was over and she was to return to her old job and job location at PEDC to face whatever accusations and events that might await her there. She sought the assistance of Inspector Fox, who tried to intervene for her with Mr. Beebe, the division manager. Inspector Fox's efforts did not succeed and by August 20, 1992, coincidentally the date that Davis was scheduled to be interviewed in the Fitzwater arbitration, plaintiff had decided to avoid the problem altogether by filing for workers' compensation and not returning to work. This decision was supported by her psychologist, with whom she had been counselling since May, 1992.

Almost one year after Davis left her job and after being awarded workers' compensation for job-related major depression, Davis initiated EEO counselling. A Final Interview Letter occurred in November, 1993, and with it Davis was furnished forms and instructions that if she wished to file a formal EEO Complaint, it was to be sent to the Regional Office at San Bruno, California. Although whether the filing of a formal EEO Complaint occurred is a disputed issue, it is clear that no such complaint has come into evidence and there is no evidence that such a complaint was ever received by the Regional Office.

### STANDARD OF REVIEW MOTIONS FOR JUDGMENT AS A MATTER OF LAW

Rule 50(a) of the Federal Rules of Civil Procedure provides:

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

### DISCUSSION

A. Timeliness issues

■ The initial issue raised by the defendant during the hearing on the motion for judgment as a matter of law concerns the timeliness of plaintiff's claims and her contacts with the EEOC. The parties all agree that under the applicable EEOC regulations, federal employees must bring a discrimination complaint to the attention of an EEO counselor forty-five days following the alleged discrimination. 25 C.F.R. § 1614.105(a)(1). These time limits are similar to a statute of limitations period. An individual who has failed to comply with the administrative timing requirements is barred from bringing an action in federal court, absent grounds for equitable tolling. *See e.g., McAdams v. Reno*, 858 F.Supp. 945, 947 n. 1 (D.Minn.1994); *Pinder v. Levitt*, Unreported decision, Text at 1995 WL 329442 (S.D.N.Y.1995); *Ciampa v. Runyon*, Unreported decision, Text at 1996 WL 146283 (D.Mass.1996); *Fidis v. Lakeside Medical Center*, Unreported decision, Text at 1995 WL 387582 (N.D.Ill.1995); *Abdullah–Johnson v. Runyon*, Unreported decision, Text at 1995 WL 118268 (E.D.Pa.1995).

Here, the evidence is clear that the plaintiff's formal complaint was not commenced within the applicable 45 day period and thus, the issue is whether there are grounds for equitable tolling of this period.

■ The Court has considered the evidence presented by the plaintiff during her case-in-chief and is unable to find any evidence to support a finding that this time period has been equitably tolled. There is no evidence at all in the record that suggests any effort by the government to actively mislead the employee nor is there evidence of the existence of any extraordinary circumstances that would require a finding that the applicable time period has been tolled.

The plaintiff in this instance is not incompetent; the facts are quite to the contrary. Although the testimony of Dr. Pock was that plaintiff's depression made it difficult for her to respond and that her condition became worse with the passage of time, it does not show she was unable to proceed. The evidence shows that plaintiff filed workers' compensation documents and the related application and that she was well able to protect her interests in that regard. Nothing presented during the trial showed that plaintiff was unable to proceed on other matters. EEO notices were posted prominently in the workplace; plaintiff knew Kadison was the correct contact for initiating EEO activities. The evidence also showed that plaintiff had had actual contact with Kadison in the past in Kadison's capacity as EEO coordinator. Additionally, the Court notes that the evidence disclosed that during that period of time in question, plaintiff was able to attend college courses, obtained good grades and was involved in other activities.

The Court has considered *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264 (10th Cir.1996), as providing guidance on the issue of whether plaintiff's mental condition would provide a reason for equitably tolling the applicable limitations period in this case. In that case, the circuit court stated that equitable exceptions to the time limitations set out in Title VII are narrowly construed. *Biester*, 77 F.3d at 1267. Noting that the Tenth Circuit has stated that the limitations period may be tolled where a claimant has been "actively misled," *id.*, it continued by noting that it has never held that mental incapacity tolls the statute of limitations. *Id.* It discussed other courts that had recognized an exception for mental incapacity in exceptional circumstances and also noted that some of the courts that do recognize mental illness as a reason for equitable tolling refuse to toll those time limitations where a plaintiff is represented by counsel during the limitations period. *Id.* Here, plaintiff has not asserted exceptional circumstances; there is no claim she was adjudged incompetent or institutionalized. She was capable of pursuing her own claim and she had representation of counsel through the period. The Court concludes that the evidence in this case is not sufficient

to find that the applicable limitations period should be equitably tolled.

Plaintiff received her final interview letter, dated November 22, 1993, on December 1, 1993. Defendant's Exhibit A–6. Attorney Zodrow wrote to Ms. Kadison on December 13, 1993. advising that plaintiff wished to make a formal complaint. *See* Plaintiff's Exhibit 27. However, no steps were ever taken by plaintiff or her attorney to actually file a formal complaint within the applicable 15 day time period. There was a complete dearth of evidence during trial that plaintiff, personally or through counsel, ever filed a timely formal EEO complaint with the agency. Accordingly, the Court finds that plaintiff has failed to fully exhaust administrative remedies and that the claims for relief asserted in this civil action are therefore barred. Notwithstanding this finding, the Court will proceed to address the substance of plaintiff's claims.

## B. Handicap Discrimination

 This case also raises issues under the Rehabilitation Act, 29 U.S.C. § 794. It is unlawful for an employer to discriminate against a qualified individual with a disability because of that person's disability. Plaintiff must prove (1) that she is a disabled person; (2) that she was otherwise qualified apart from her handicap, i.e., with or without reasonable accommodation, she could perform the job's essential functions; and (3) that adverse employment action was taken under circumstances which give rise to an inference that her rejection was based solely on her disability. *Williams v. Widnall*, 79 F.3d 1003, 1005 (10th Cir.1996), citing *Pushkin v. Regents of University of Colorado*, 658 F.2d 1372, 1386–87 (10th Cir.1981). Plaintiff must first establish a prima facie case before the burden shifts to the defendant to show a nondiscriminatory reason for its actions. *Williams v. Widnall*, 79 F.3d at 1005. *See also Daubert v. United States Postal Service*, 733 F.2d 1367 (10th Cir.1984); *Moreno v. Consolidated Rail Corp.*, 909 F.Supp. 480 (E.D.Mich.1994).

 This case does not fit within the usual paradigm for such claims. Plaintiff's case is difficult because from all accounts

plaintiff's major concern was fear for her safety and fear in the workplace at PEDC that was generated by and arising out of her activities as a confidential informant for the USPS. Her concerns were not that actions were being taken against her by her employer because of her disability. What is apparent from all of the evidence at trial is that nothing was ever known by or disclosed to the defendant by plaintiff relating to her alleged disability. Plaintiff had never made known to defendant the fact of her disability, major depression, to her employer. In the absence of such knowledge, it is difficult to discern any causal connection between the employment actions taken that affected plaintiff and her alleged disability. Simply stated, an "employer must have knowledge of the handicap for liability to attach under the Rehabilitation Act." *Stubler v. Runyon*, 892 F.Supp. 228, 230–231 (W.D.Mo.1994). The evidence in this case does not support a finding that the employer had knowledge of plaintiff's handicap. Defendant is entitled to judgment as a matter of law on plaintiff's handicap claim under the Rehabilitation Act.

## C. Retaliation

█ As to plaintiff's retaliation claim, plaintiff has asserted that the protected activity she engaged in, i.e., complaining about McMullin's harassment of her to her superiors, resulted in adverse actions affecting her, including the failure to process and respond to plaintiff's EEO claims. The evidence is not sufficient to establish any causal connection between plaintiff's complaints about McMullin and the failure to complete the EEO investigation as alleged by plaintiff. Further, even if this Court would find there is such evidence in the record, plaintiff has, and in fact has exercised, an adequate remedy, i.e., filing the instant lawsuit in which plaintiff is able to raise and request consideration of the underlying issues.

The evidence at trial showed that once the supervisors became aware of McMullin's actions affecting his co-worker, plaintiff, he was removed from the communications office and could no longer be a threat to plaintiff in that workplace. To support a retaliation claim, plaintiff would have to establish by a preponderance of the evidence that the employer, once it became aware of the actions of McMullin, did not take proper remedial action to alleviate the problem.

42 U.S.C. § 2000e–3(a) provides in part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

█ A plaintiff must first set forth a prima facie case of retaliation by establishing the following elements:

(1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's adverse action.... Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. If the district court declines to dismiss a Title VII claim for failure to make a prima facie case and the defendant presents evidence of a legitimate business reason, the plaintiff must then be allowed to demonstrate that the defendant's offered reasons are a mere pretext for discrimination.

*Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985–986 (10th Cir.1996) (citations omitted); *see also Purrington v. University of Utah*, 996 F.2d 1025 (10th Cir.1993).

Reviewing the evidence that was presented during plaintiff's case-in-chief, the Court concludes that there is no evidence whatsoever, direct or otherwise, of retaliation or of any causal between the alleged adverse employment action, that is, the failure to process plaintiff's EEO complaints and the matters concerning McMullin. There is no evidence that the employer's decisions regarding plaintiff's employment at the USPS had any-

thing to do with her having made allegations of sexual harassment by McMullin while she was in the communications office. There is no evidence of a causal connection between the plaintiff's protected conduct, filing her Title VII claim, and the alleged adverse personnel decisions affecting her. The Court finds there was no retaliation as alleged by plaintiff in this case. Accordingly, the Court finds that plaintiff has failed to carry her burden of proving her retaliation claim and finds that defendant is entitled to judgment as a matter of law.

### D. Hostile work environment

 The Tenth Circuit, in a recent case citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), stated the following regarding a hostile work environment claim alleging sexual harassment:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abuse—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation. . . .
>
> Any harassment of an employee "that would not occur but for the sex of the employee . . . may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII." . . . "If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." . . .

*Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1537 (10th Cir.1995) (citations omitted).

During trial, the evidence showed that plaintiff said nothing about her problems with McMullin to her supervisors. The first time her supervisors became aware of the problem was when he saw McMullin's conduct around plaintiff. Mr. Budny acted immediately, counselling McMullin not to engage in such conduct. Unfortunately,

McMullin apparently continued to pursue and give plaintiff his attention and continued to act inappropriately on the job. When plaintiff went to her employer to complain, he immediately followed up on her complaint, and contacted the EEO officer to report the incident. Within a short time thereafter, McMullin was removed from the communications office, for whatever reason, and was no longer a problem for plaintiff. She continued to enjoy and succeed in her employment in communications.

In such a situation it is difficult to see how the work environment could be considered intolerable to plaintiff, especially when she continued to work there and apparently enjoying and succeeding at her work. With all of the information presented to the Court during trial, it is inappropriate to impute liability to the employer under such circumstances arising out of McMullin's conduct. Accordingly, the Court finds plaintiff has failed to carry her burden of proving her hostile work environment claim and the defendant is entitled to judgment as a matter of law.

### Conclusion

Accordingly, for the foregoing reasons, and in accordance with the Court's oral rulings and findings from the bench following the conclusion of plaintiff's case-in-chief, the Court finds that the defendant, United States Postal Service, is entitled to judgment as a matter of law on all claims. It is therefore

**ORDERED** that the defendant's motion for judgment as a matter of law, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, shall be, and is, **GRANTED.**