**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JANET DAVIS, named as "aka
Confidential Informant #59",

     Plaintiff - Appellant,

v.

UNITED STATES POSTAL
SERVICE, UNITED STATES
POSTAL INSPECTION SERVICE,
MARVIN RUNYON, U.S. Postmaster
General,

     Defendants - Appellees.

No. 96-1304

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 95-WY-1421-AJ)**

---

John F. McBride (John J. Zodrow with him on the briefs), Zodrow, et al., P.C.,
Denver, Colorado, for the Plaintiff - Appellant.

Kathleen L. Torres, Assistant United States Attorney (Henry L. Solano, United
States Attorney, and William G. Pharo, Assistant U.S. Attorney, with her on the
brief), Denver, Colorado, for the Defendants - Appellees.

---

Before **HENRY** and **LUCERO**, Circuit Judges, and **MILES-LaGRANGE**[*],
District Judge.

---

     [*]     The Honorable Vicki Miles-LaGrange, United States District Judge for the
Western District of Oklahoma, sitting by designation.

**LUCERO**, Circuit Judge.

In this opinion, we consider whether an employee is required to leave her employment or demonstrate that her performance at work suffered in order to vindicate her right to be free of a hostile work environment. Janet Davis, a postal employee, brought this action against the United States Postal Service and related parties (collectively "USPS") alleging employment discrimination on the basis of disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as well as hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). At the close of plaintiff's case-in-chief, the district court granted defendants' motion for judgment as a matter of law as to all of plaintiff's claims. Davis now appeals the lower court decision as to the disability and hostile work environment discrimination claims pursuant to 28 U.S.C. § 1291. We affirm the district court's dismissal of the disability discrimination claim for failure to exhaust administrative remedies. We reverse the dismissal of plaintiff's Title VII claim, however, because we conclude that an employee need not demonstrate either actual or desired termination from employment in order to maintain a hostile work environment claim.

# I

In August 1990, Davis, a training technician at the Postal Education and Development Center ("PEDC") located at the General Mail Facility in Denver, Colorado, was asked by Postal Inspector Donald Fox to become a confidential informant in an investigation into drug trafficking by postal employees. Davis was subsequently transferred to various other facilities where she made controlled drug purchases from three postal workers. When Davis learned that the Postal Inspection Service intended to arrest them, she became anxious that her identity might be revealed and relayed her concerns to Fox. With Fox's assistance, Davis was assigned to a temporary position in Des Moines, Iowa. The three employees were arrested and eventually fired. Fox, concerned about Davis's personal safety and emotional condition, requested that she be assigned to a position away from the PEDC upon her return to Denver. In August 1991, Davis was placed at the USPS's Communications Department in downtown Denver.

Shortly after her transfer to the Communications Department, Perry McMullin, a co-worker, began greeting Davis by hugging and kissing her, ignoring her objections to his behavior. Davis did not report these incidents to her supervisors. In February 1992, Scott Budny, a supervisor in the department, observed McMullin hugging Davis. Budny immediately warned him not to do it again. A few weeks later, in early March, McMullin approached Davis from

behind, grabbed her by the hips, and thrust his pelvis against her. Davis reported this incident to Budny and another supervisor. Budny contacted Phyllis Kadison, manager of the Postal Service's Equal Employment Opportunity office, who requested a meeting with Davis. Kadison later indicated to Budny that she was aware of prior similar behavior by McMullin.

At the meeting, Davis told Kadison about the incident. According to Davis, Kadison stated she was glad that Davis was reporting this incident because other women had allegedly been sexually harassed by McMullin but would not make formal complaints. Kadison could not recall the details of this meeting at trial but testified that, in order for any action to be taken against McMullin, Davis would have had to request counseling or have agreed to file a complaint. Davis testified that Kadison directed her to make a statement to another EEO office employee. Although Davis acknowledged that she was reluctant to bring formal charges against McMullin, she testified that she understood that a formal complaint was being filed.

The next day, McMullin, Davis and another employee drove to the Denver Convention Center to prepare an exhibition. According to Davis, McMullin made a sexually obscene gesture to her while in the car. She did not report this incident. A few days later, McMullin again grabbed Davis and hugged and kissed her. According to the postal service, McMullin was transferred out of the

Communications Department immediately thereafter, in early March; Davis testified, however, that she was still working with him some weeks later in early April.[1]

Meanwhile, William Fitzwater, one of the employees fired as a result of Davis's involvement in the drug sting, contested his termination in a union grievance proceeding. In April 1992, the arbitrator presiding over this proceeding directed the Postal Service to disclose Davis's identity as the confidential informant. Davis was ordered to testify at a hearing related to the grievance proceeding on August 20, 1992. According to Inspector Fox, Davis became distraught at this prospect.

In August 1992, Davis received an interoffice communication notifying her that on August 20, she would be reassigned to her permanent position at the PEDC. She contacted Fox, Budny, Kadison, and her union representative, among others, requesting that she be permitted to continue her detail at the Communications Department because of the hostility she would face from her co-workers and the emotional stress engendered by a return to the PEDC. Fox

---

[1] In order to support its claim as to the date of McMullin's transfer, the USPS submitted documents purporting to reflect that he was being paid by a different department as of March 6. See Appellee's App. at 228-34. The earliest of these documents, however, appears to be dated "4/92." Id. at 228. Absent further explanation as to the import of these documents and how they support the USPS's factual assertion, we cannot conclude that they resolve the dispute as to when McMullin left the department.

relayed his concern for her emotional health to postal management in Denver. Davis testified that she was told she could not remain at Communications because temporary positions such as hers were being eliminated pursuant to a nationwide reorganization of the agency, and employees were being returned to their permanent positions in order to facilitate the reorganization. Frank Beebe, the Denver postmaster and district manager, testified, however, that no policy was in place at that time preventing Davis from remaining in the Communications Department.

Rather than return to work at the PEDC, Davis took leave, eventually exhausting her annual and sick leave, and then took leave without pay status. She also filed for benefits with the Office of Workers' Compensation Programs ("OWCP"). Her OWCP claim was approved in March 1993. According to a psychiatrist who evaluated Davis for the OWCP, she was unable to work due to major depression precipitated by the loss of her position at the Communications Department. Her personal psychiatrist, Dr. Jeanne Floerke, testified that the impending reassignment to the PEDC contributed to her depression.

In May 1993, the USPS offered Davis the same position in the Communications Department that she had left unwillingly the previous August. Davis immediately attempted to contact Kadison to discuss possible EEO claims against the USPS. After much effort, Davis was able to schedule a meeting with

Kadison on July 13, 1993, following which Davis filed a request-for-counseling form, an informal complaint alleging discrimination on the basis of sex and mental disability.

The EEO office issued a letter dated November 22, 1993, denying her pre-complaint and notifying her of the right to file a formal complaint of discrimination within 15 days. By separate letters dated December 9, 1993 to Kadison and Mel Stencil, the Denver postal service's human resources manager, Davis's attorney entered his appearance as her legal representative and requested a 21-day extension to file a formal complaint. The Denver EEO office did not respond to this letter. A letter from Davis's attorney, dated December 13, 1993, and addressed to Kadison, stated that "Ms. Davis wishes to make a formal complaint." Appellee's App. at 191.[2] Davis testified that she was mailed a copy of this letter by her attorney. The Denver EEO office did not respond to this letter, and Kadison testified it was never received. On April 10, 1994, Davis's attorney sent another letter to the Denver EEO office, inquiring about the status of her formal complaint. The Denver EEO office did not respond to this letter either. Davis's attorney, by letter dated July 22, 1994, again inquired about the status of her claim and sought to review the file. By letter dated July 28, 1994,

---

[2]   According to appellee, the December 13, 1993 letter was only admitted in evidence as an attachment to Plaintiff's Exhibit 27. See Appellee's Br. at 18. For purposes of this opinion, we assume the letter was properly in evidence.

Kadison responded that she had no record that a formal complaint had been filed within 15 days of Davis's receipt of the November 22, 1993 letter.

## II

The district court entered judgment as a matter of law in favor of defendants on plaintiff's disability and hostile work environment claims for failure to exhaust administrative remedies and on the merits.[3]  Judgment as a matter of law is appropriate "[i]f during a jury trial a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a).  We review a district court's grant of this motion de novo.  See Corneveaux v. CUNA Mut. Ins. Group, 76 F.3d 1498, 1502 (10th Cir. 1996).  "[A] court may grant the motion 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" Finley v. United States, 82 F.3d 966, 968 (10th Cir. 1996) (quoting Q.E.R., Inc. v. Hickerson, 880 F.2d 1178, 1180 (10th Cir. 1989)).  On review, we examine the evidence in the light most favorable to Davis, extending to her the benefit of all reasonable inferences.  Id.

---

[3]     The district court dismissed the retaliation claim as well.  Because the appellant's briefs before this court do not address the retaliation claim, that claim is deemed waived on appeal.  See Jenkins v. Wood, 81 F.3d 988, 995 (10th Cir. 1996).

## A. Disability Claim

Plaintiff's disability claim is based on her reassignment as of August 20, 1992 to the PEDC from the Communications Department and the alleged failure of the USPS to accommodate her mental and emotional condition. It is undisputed that plaintiff did not raise concerns about her reassignment with any EEO counselors within 45 days of that date as required by the applicable regulations. See 29 C.F.R. § 1614.105(a)(1) (requiring federal employees "to initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.") Plaintiff argues that we should disregard this 45-day time limitation based on equitable tolling or estoppel. See 29 C.F.R. § 1614.105(a)(2) (extending the 45-day time limit "when the individual shows . . . that he or she did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or Commission.") We need not address plaintiff's equitable tolling or estoppel arguments, however, because, even assuming that the 45-day deadline should be equitably extended, we find that plaintiff's disability claim would still

be procedurally barred by the 15-day time limit under 29 C.F.R. § 1614.106(b), for failure to file a timely formal complaint.[4]

It is undisputed that plaintiff received notice of the requirements for filing a formal complaint by December 1, 1993. Under § 1614.106(b), she was required to file a formal complaint within 15 days of that date. Plaintiff argues that the December 13, 1993 letter from her attorney to Kadison constitutes a timely formal complaint. Although Kadison claimed that her office never received the December 13, 1993 letter, she testified that she would have treated it as a formal complaint if she had received it. Plaintiff's position on appeal is that, by producing a copy of the letter, she has made a sufficient showing to withstand judgment as a matter of law by raising a question of fact over whether a formal complaint was mailed to the USPS in a timely manner.

---

[4]       Section 1614.105(d) of the regulations provides that:

> [T]he Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person brought the matter to the Counselor's attention. If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint. The notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of the notice, of the appropriate official with whom to file a complaint and of the complainant's duty to assure that the agency is informed immediately if the complainant retains counsel or a representative.

Section 1614.106(b) mandates that "[a] complaint must be filed within 15 days of receipt of the notice required by § 1614.105(d) . . . ."

While the law presumes receipt of a properly addressed piece of mail, see Moya v. United States, 35 F.3d 501, 504 (10th Cir. 1994), there is no testimony on the record permitting any inference that the December 13, 1993 letter was actually mailed. The common law presumption that an item properly mailed was received by the addressee arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail. See Konst v. Florida E. Coast Ry. Co., 71 F.3d 850, 851 (11th Cir. 1996); see also Hagner v. United States, 285 U.S. 427, 430 (1932) ("The rule is well-settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.") Plaintiff's testimony that her attorney mailed the letter to USPS is insufficient because plaintiff has no personal knowledge that her attorney did so. There is no affidavit presented in the record by the attorney or anyone from the attorney's office as to such a mailing, nor is there any testimony regarding the customary mailing practices in the attorney's office that would permit an inference that the letter had sufficient postage and was mailed. Cf. Wells Fargo Bus. Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944 (5th Cir. 1983) (placing letters in the mail may be proved by circumstantial evidence including customary mailing practices used in the sender's business and testimony that letter was seen in envelope and sealed).

Because plaintiff offers no evidence to rebut Kadison's testimony that she did not receive a formal complaint regarding plaintiff's disability claim, judgment as a matter of law was properly entered on this claim for failure to exhaust administrative remedies.

### B. Hostile Work Environment Claim

Plaintiff's hostile work environment claim does not suffer from the same infirmities. There is no question that Davis brought her sexual harassment complaint to the attention of the EEO counselor within the prescribed time limit, that is, she met with Kadison within at least 45 days of the alleged sexual harassment.

The record is unclear as to how plaintiff's sexual harassment complaint was handled by the USPS both at this meeting and subsequently, and whether a formal complaint was filed. According to Kadison, plaintiff was reluctant to file a formal complaint at their initial meeting. Plaintiff, however, testified that though she was reluctant to file a formal complaint, she believed she had filed one. Although Kadison testified that she did not recall a written statement being taken at this meeting, in a memo dated November 13, 1992 to the supervisor of the injury compensation office, Kadison refers to a "written document" in which Janet Davis alleges sexual harassment by Perry McMullin. See Appellee's App. at 189. Davis and Kadison's conflicting testimony as to what occurred at that

meeting is sufficient to create a dispute of fact over whether Davis did in fact file a formal complaint, a dispute which must be resolved in favor of plaintiff for purposes of this motion.[5] Taking all inferences in favor of plaintiff, dismissal of this claim on procedural grounds is therefore inappropriate. We thus turn to the merits of Davis's hostile work environment claim.

This claim is predicated on the allegations of harassment by McMullin and the USPS's imputed liability for that harassment. The district court dismissed this claim on the merits, stating:

> Within a short time [of her complaint], McMullin was removed from the communications office, for whatever reason, and was no longer a problem for plaintiff. She continued to enjoy and succeed in her employment in communications.
>
> In such a situation it is difficult to see how the work environment could be considered intolerable to plaintiff, especially when she continued to work there and apparently [was] enjoying and succeeding at her work. With all of the information presented to the court during trial, it is inappropriate to impute liability to the employer under such circumstances . . . .

Davis v. United States Postal Serv., 934 F. Supp. 1210, 1216 (D. Colo. 1996).

In order for a hostile work environment sexual harassment claim to withstand judgment as a matter of law, a plaintiff must show that a rational jury

---

[5] Even if we were to conclude that plaintiff did not file a formal complaint at the meeting with Kadison, there is no evidence that she was then notified in writing by the EEO counselor within 30 days of their meeting of the 15 day time limit for filing a formal discrimination complaint, as required by 29 C.F.R. § 1614.105(d).

could find that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)). While the plaintiff must show that the "environment would reasonably be perceived, and is perceived, as hostile or abusive," she need not show actual psychological injury. Whether an environment is hostile or abusive "can be determined only by looking at all the circumstances . . . [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23.

We disagree with the district court that the record, taken in the light most favorable to the plaintiff, cannot show a hostile work environment. Under the Meritor/Harris standard, a plaintiff must show that the environment was both objectively and subjectively hostile or abusive. See Smith v. Norwest Fin. Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997). A rational jury could find that a work environment in which a plaintiff is subjected to regular unwelcome hugging and kissing combined with the other specific incidents

alleged by Davis, one of which the district court described as an assault, see Davis, 934 F. Supp. at 1212, is objectively hostile.

In order to prevail on the subjective component of this test, the law does not require a plaintiff to show that the discriminatorily abusive work environment seriously affected her psychological well-being, Harris, 510 U.S. at 22, or that it tangibly impaired her work performance, id. at 25 (Scalia, J., concurring). Likewise it does not require that she quit or want to quit the employment in question. The trial court's implicit conclusion — that a plaintiff who otherwise enjoys her work, is successful, and testifies that she hopes to continue that employment cannot as a matter of law "subjectively perceive the [work] environment to be abusive," Harris, 510 U.S. at 21 — is erroneous. Such a result would place plaintiffs seeking to challenge a hostile work environment in the untenable position of being unable to challenge hostile or abusive behavior when they occupy an otherwise desirable position, forcing them to choose between remaining in suitable employment or pursuing a claim to redress a legal wrong. Title VII, designed to compensate plaintiffs for the effects of such hostile work environments and to prevent such hostile environments from occurring, does not force them into such a Hobson's choice. "'The criterion is not what a reasonable woman employee is capable of enduring, but whether the offensive acts alter the conditions of employment.'" Dey v. Colt Const. & Dev. Co., 28 F.3d 1446, 1455

- 15 -

(7th Cir. 1994) (quoting <u>King v. Hillen</u>, 21 F.3d 1572, 1583 (Fed. Cir. 1994)). Title VII does not presume that the reasonable employee is incapable of separating the deleterious effects of a hostile environment from the aspects of the job which she enjoys and finds fulfilling, and it is in part intended to provide her with means to put an end to the hostile or abusive behavior so she can continue in otherwise desirable employment. Davis testified that the actions of Mr. McMullin made her "more and more stressed out and pretty cracked," Appellant's App. at 63, and feel "[t]errible," <u>id.</u> at 69, that she "hated" the behavior, <u>id.</u> at 69, was "pretty shocked," <u>id.</u> at 64, and that she "just wanted to avoid the whole situation," <u>id.</u> at 63. Such testimony is sufficient to go to the jury on whether she subjectively perceived a hostile environment.

The question of whether the USPS can be held liable for this alleged hostile work environment is a closer one. An employer may be held liable for "negligence or recklessness in failing to respond to hostile work environment sexual harassment by employees." <u>Hirschfeld v. New Mexico Corrections Dep't</u>, 916 F.2d 572, 577 (10th Cir. 1990) (citing Restatement (Second) of Agency § 219(2)(b) (1958)). This liability attaches when a plaintiff establishes that an employer had actual or constructive notice of the hostile work environment and failed to respond adequately to that notice. <u>See</u> <u>Harrison v. Eddy Potash, Inc.</u>, 112 F.3d 1437, 1444 (10th Cir. 1997); <u>see also</u> <u>Creamer v. Laidlaw Transit, Inc.</u>,

- 16 -

86 F.3d 167, 170-71 (10th Cir. 1996) (holding employer would be liable if it failed to remedy a hostile work environment brought about by sexual harassment of which it knew or should have known). There is evidence that the USPS was aware of previous complaints against McMullin and thus should have been on notice of his harassing behavior. See Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 784 (10th Cir. 1995) (holding plaintiff may rely on employer's notice of evidence of similar harassment by co-worker in order to raise a genuine issue of material fact about employer's notice); Yates v. Avco Corp., 819 F.2d 630, 636 (6th Cir. 1987) (finding employer's duty to address harassment may be "created . . . when initial allegations of harassment were reported," not once plaintiffs registered a formal complaint). Additionally, the record is unclear as to why McMullin was eventually transferred as well as how soon he was transferred after Davis reported the harassment. Reading this record in the light most favorable to plaintiff, a rational jury could find the USPS negligently handled plaintiff's sexual harassment complaint in failing to remedy a known hostile work environment.

## III

We hold that judgment as a matter of law is AFFIRMED on plaintiff's disability claim for failure to exhaust administrative remedies and is REVERSED

on plaintiff's hostile work environment claim on the merits.  This case is

REMANDED for further proceedings.