**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 20 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DIANA ROGERS,

Plaintiff-Appellant,

v.

CITY-COUNTY HEALTH
DEPARTMENT OF OKLAHOMA
COUNTY; J. DON HARRIS, D.D.S.;
PAUL DUNGAN,

Defendants-Appellees.

No. 01-6065
(D.C. No. 99-CV-1574-T)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **MURPHY** , **McKAY** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Diana Rogers is appealing the district court's entry of summary judgment in favor of defendants City-County Health Department of Oklahoma County (Health Department), J. Don Harris (Harris), and Paul Dungan (Dungan). We affirm the district court's entry of summary judgment on: (1) plaintiff's claim of *quid pro quo* sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (Title VII); (2) plaintiff's claim of hostile work environment racial discrimination under Title VII; and (3) plaintiff's claim of racial discrimination under 42 U.S.C. § 1983. We reverse the district court's entry of summary judgment on: (1) plaintiff's claim of hostile work environment sexual harassment under Title VII; (2) plaintiff's claim of sexual harassment under § 1983; and (3) plaintiff's state-law claims against defendant Harris.

I.

Plaintiff is a Hispanic female who was employed by the Health Department from 1991 until March 1999. In 1997, plaintiff was placed in an office area with her African-American supervisor, Carolyn Harris,[1] and two African-American co-workers, and she alleges that they harassed her and subjected her to a hostile work environment based on her race or national origin. Plaintiff alleges that she

---

[1] It is unclear from the record whether Carolyn Harris was plaintiff's supervisor for the entire time that plaintiff claims she was subjected to a hostile work environment. However, we will assume that this was the case for purposes of resolving the issues in this appeal.

complained about the harassment to upper-level supervisors in the Health Department, including defendant Dungan, the director of the Department, but that nothing was done to correct the situation.

Plaintiff further alleges that defendant Harris, the chairman of the Health Department, sexually harassed her on two separate occasions. The first incident occurred on February 17, 1999, when plaintiff was meeting with defendant Harris to discuss her problems with Carolyn Harris. Plaintiff alleges that defendant Harris told her during the meeting that he would help arrange for her workplace to be moved to a different building and for her to receive a raise of $1,000.00 per month. Plaintiff alleges that defendant Harris then grabbed her by the neck and forcibly kissed her, pushing his tongue into her mouth. Plaintiff claims she pushed defendant Harris away, telling him she was happily married and that what he was doing was wrong. The second incident occurred during a subsequent meeting between plaintiff and defendant Harris on March 2, 1999. Plaintiff secretly tape recorded her conversation with defendant Harris at the second meeting, and the written transcripts of the tape recording, both plaintiff's and defendants' versions, confirm that defendant Harris began kissing plaintiff at the conclusion of the meeting and that he continued to kiss her even after she asked him to stop. The transcripts also confirm that defendant Harris admitted to having kissed plaintiff at the prior meeting on February 17.

Plaintiff did not return to her job at the Health Department after the incident on March 2. Instead, she submitted a written grievance to the Department, alleging both sexual harassment and a racially hostile work environment. The Department never responded to her grievance, and plaintiff eventually filed suit against defendants in the United States District Court for the Western District of Oklahoma. In her amended complaint, plaintiff asserted claims against defendants for sexual harassment and racial discrimination under Title VII and § 1983, and she also claimed she was constructively discharged from the Health Department. In addition, plaintiff asserted state-law claims against defendant Harris for battery and intentional infliction of emotional distress. The district court entered summary judgment in favor of defendants on all of plaintiff's claims, and this appeal followed.

## II.

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

A. Plaintiff's Title VII Claims

1. Hostile Work Environment Sexual Harassment

To survive summary judgment on her claim of hostile work environment sexual harassment, plaintiff must show that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *See Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (quotation omitted). In addition, plaintiff must show that the harassing conduct was "both objectively and subjectively abusive." *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir.) (quotation omitted), *petition for cert. filed*, 70 U.S.L.W. 3361 (U.S. Nov. 8, 2001) (No. 01-692). However, plaintiff "need not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." *Penry*, 155 F.3d at 1261. Instead, the existence of sexual harassment must be determined "in light of the record as a whole and the totality of [the] circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Meritor Sav. Bank v. Vinson*, 477 U.S.

57, 69 (1986) (quotations omitted). Under this standard, "an isolated incident may suffice if the conduct is severe and threatening." *Turnbull*, 255 F.3d at 1243.

The district court found that plaintiff failed to establish a *prima facie* case of sexual harassment based on a hostile work environment because the two kissing incidents involving defendant Harris were the only incidents of alleged sexual harassment she encountered during the eight years she was employed at the Health Department. Construing the factual record and all inferences therefrom in favor of plaintiff, we disagree with the district court's analysis and we hold that defendant Harris's conduct was sufficiently severe and threatening so as to create a genuine issue of material fact for trial concerning whether plaintiff was subjected to a hostile work environment. *See Davis v. United States Postal Serv.*, 142 F.3d 1334, 1337, 1341-42 (10th Cir. 1998) (holding that incidents of unwelcome hugging and kissing and other physical contact by plaintiff's co-worker, one of which could be described as a physical assault, were sufficient to support a jury finding of a hostile work environment).

In contrast to *Davis*, this case does not involve repeated incidents of unwelcome intimate physical conduct. Nonetheless, this case presents an equally troubling scenario because the alleged harasser is not simply a co-worker as in *Davis*, but is instead the highest ranking official in the Health Department. Further, defendant Harris physically forced himself on plaintiff in a sexual and

intimate manner at a time when she was specifically requesting his assistance in addressing issues related to her work. A jury could conclude that his conduct was particularly severe and threatening given this context. Accordingly, the district court erred by entering summary judgment on plaintiff's claim of hostile work environment sexual harassment.

Plaintiff alleges she was constructively discharged from the Health Department as a result of the sexually hostile work environment. The district court did not address plaintiff's constructive discharge claim, and it will need to determine on remand whether plaintiff has sufficient evidence to support such a claim. Because it found no actionable sexual harassment, the district court also did not address whether there is a basis under Title VII for imposing direct or vicarious liability against the Health Department, and that issue will need to be addressed on remand as well. In remanding plaintiff's hostile work environment claim to the district court, we intend no comment on these issues.

2. *Quid Pro Quo* Sexual Harassment

We agree with the district court that plaintiff failed to establish a *prima facie* case of *quid pro quo* sexual harassment under Title VII. "The gravamen of a *quid pro quo* sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the

conduct." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir. 1987). It is undisputed that defendant Harris kissed plaintiff at the meetings on February 17 and March 2, 1999, and that he initiated this intimate physical contact after telling plaintiff he would assist her in obtaining a transfer and salary increase. However, there is no evidence that defendant Harris subjected plaintiff to any adverse job consequences because she refused to submit to his sexual advances. In fact, plaintiff never returned to her job after the second meeting with defendant Harris, and we have held that a defendant may refute a claim of *quid pro quo* sexual harassment "with proof that no negative employment action was taken by the employer, *i.e., that the employee resigned*." *Smith v. Cashland, Inc.*, 193 F.3d 1158, 1160 (10th Cir. 1999) (emphasis added). Accordingly, the district court properly entered summary judgment on plaintiff's *quid pro quo* claim. [2]

---

[2] Plaintiff claims she was constructively discharged as a result of the hostile work environment caused by defendant Harris's sexual harassment and that her constructive discharge was an adverse job consequence that will support her *quid pro quo* claim. We disagree. By definition, a claim of *quid pro quo* sexual harassment must be supported by a negative employment action that is separate and distinct from the underlying sexual misconduct ( *i.e.*, a demotion), and plaintiff effectively resigned before any such action could be taken against her. As a result, while plaintiff may assert a constructive discharge claim as part of her hostile work environment claim if there is sufficient evidence to show that a reasonable person in her position would have felt compelled to resign, *see Penry*, 155 F.3d at 1264, an issue we leave for the district court to determine on remand, she cannot survive summary judgment on her *quid pro quo* claim based on a constructive discharge theory.

-8-

### 3. Hostile Work Environment Racial Discrimination

The district court found that "[t]here is evidence that [Carolyn] Harris yelled or cursed at co-workers, including plaintiff, bumped into employees in the hall, hit plaintiff while they were standing near the coffee pot, [and] threw papers and pencils at plaintiff and other employees." Aplt. App. at 452. Plaintiff also alleges that the other two African-American employees in her work area engaged in similar conduct. Plaintiff has failed to demonstrate, however, that Ms. Harris or the other two employees singled her out for abuse because of her race. We therefore agree with the district court that plaintiff failed to establish a *prima facie* case of racial discrimination based on a hostile work environment.

While the record indicates that two other employees of the Health Department had also complained that Ms. Harris treated them in an abusive manner, *see* Aplt. App. at 301-26, plaintiff has likewise made no showing that Ms. Harris singled out these employees for abuse because of their race. In fact, one of the employees testified that she believed Ms. Harris was only being "inconsiderate," *see id.* at 305, while the other employee testified about three occasions when Ms. Harris acted in an unprofessional manner, but gave no indication that her conduct was motivated by any sort of racial animus, *see id.*

at 310-26. [3] Thus, the entry of summary judgment was proper on plaintiff's claim of hostile work environment racial discrimination, including any related constructive discharge claim. *See Bolden v. PRC Inc.*, 43 F.3d 545, 551-52 (10th Cir. 1994) (affirming summary judgment on hostile work environment and constructive discharge claims where plaintiff failed to establish that he and other employees were singled out for abuse by their co-workers because of their race).

### B. Plaintiff's § 1983 Claims

#### 1. Sexual Harassment

The district court entered summary judgment on plaintiff's claim that her civil rights were violated as a result of defendant Harris's alleged sexual harassment, finding that her § 1983 claim is based on the same evidence as her Title VII claim. In light of our determination that plaintiff has sufficient evidence to support a claim of hostile work environment sexual harassment under Title VII, we reverse the entry of summary judgment on the sexual harassment aspect of plaintiff's § 1983 claim and remand the claim to the district court for reconsideration. *See, e.g., Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)

---

[3] In opposition to defendants' motion for summary judgment, plaintiff also submitted evidence showing that three other employees of the Health Department had complained that another African-American supervisor had discriminated against them based on their race. *See* Aplt. App. at 289-99. However, the alleged discrimination did not begin until March 1, 1999, *see id.* at 298, and plaintiff has failed to demonstrate the relevance of this evidence to her hostile environment claim.

-10-

(holding that sexual harassment is actionable under the Equal Protection Clause of the Fourteenth Amendment).

### 2. Racial Discrimination

Plaintiff alleges that the Health Department and defendants Dungan and Harris are liable under § 1983 because she put them on notice of the alleged racial discrimination she was experiencing, but they failed to correct the situation and thereby violated her right to equal protection of the laws under the Fourteenth Amendment. This claim is without merit because there is no underlying unconstitutional racial discrimination to support either municipal or supervisory liability in this case. We therefore affirm the entry of summary judgment on the racial discrimination aspect of plaintiff's § 1983 claim.

### C. Plaintiff's State-Law Claims

Although the district court did not specifically address the state-law claims which plaintiff has asserted against defendant Harris, the district court granted summary judgment against plaintiff "on all claims asserted." Aplt. App. at 453. In light of our decision to reverse the district court's dismissal of part of plaintiff's Title VII claims, we reverse the entry of summary judgment on plaintiff's state-law claims and remand the claims to the district court for further proceedings consistent with 28 U.S.C. § 1367.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge