HOLLOWAY, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s disposition of the discriminatory/retaliatory transfer *818 claim. But I respectfully dissent from the majority’s disposition of the hostile work environment claim.
As a threshold matter, the district court rejected the idea that any “comment or proselytizing on behalf of Plaintiffs Christian supervisor [could have] caused [plaintiff], who is also a Christian, to suffer any intentional discrimination because of religion.”[1] ApltApp. at 174. The majority opinion did not have to address this categorical dismissal of Christian-on-Christian religious harassment, as it affirms the rejection of plaintiffs hostile work environment claim for lack of the requisite severe/pervasive hostility. Given my disagreement with the majority on the latter point, it is incumbent upon me to explain briefly why I would not concur in the result on the basis of the former rationale alternatively relied upon by the district court, i.e., why I conclude a supervisor’s religious hostility that is otherwise actionable does not cease to be so merely because a subordinate shares the same, broadly denominated, religious identity.
The Sixth Circuit recognized some time ago that if a Christian employer’s favorable treatment of a Christian employee depends on the nature or extent of the employee’s perceived commitment to the employer’s religious views or standards, an actionable religious animus exists. See Blalock v. Metals Trades, Inc., 775 F.2d 703, 704-05, 708 (6th Cir.1985). In much broader but equally pertinent terms, this court has held that Title VII generally protects against “requirements of religious conformity,” which includes “ ‘all aspects of religious observance and practice, as well as belief.’ ” Shapolia v. Los Alamos Nat’l Lab., 992 F.2d 1033, 1036 (10th Cir. 1993) (quoting 42 U.S.C. § 2000e(j)). Here, Carroll’s efforts to impose on his subordinates a workplace conforming to his particular notions of Christian observance and belief fall within the compass of the statute, regardless of any commonality in their religious faith.
I turn now to the severity of the hostility directed at plaintiff, which is the focus of my dissent from the majority’s disposition. As the majority notes, the question is whether “a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment.” Davis v. United States Postal Serv., 142 F.3d 1334, 1341 (10th Cir.1998) (quotations omitted). We must look to “all the circumstances involved in the situation,” including “the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [plaintiffs] work performance,” and assess whether “the environment would be reasonably perceived (objectively) and [was] perceived (subjectively), as hostile or abusive.” Nieto v. Kapoor, 268 F.3d 1208, 1218, 1220 (10th Cir.2001) (quotation omitted).
Regarding frequency, plaintiff testified that Carroll subjected him (and his coworkers, with customers observing)[2] to an *819 incessant barrage of religious peroration and intimidation, including hourly harassment on the sales floor and involuntary prayer meetings in his office. ApltApp. 83-86, 88. As for severity, I cannot discount as a minor workplace irritant the constant religious bullying and threats of damnation cited by plaintiff, particularly as Carroll claimed to have the power to deprive him of his job, see id. at 84 (depo. at 37). The offensiveness, if not humiliation, involved was heightened by the fact that these were not just private exchanges but often quite public statements. And plaintiff testified this conduct directly interfered with his job in at least two different ways: Carroll’s intemperate religious comments on the sales floor drove customers away, see id. at 83 (depo. at 36), 86 (depo. at 45), and Carroll stopped training and assisting him once their religious conflict arose, see id. at 88 (depo. at 53). In connection with these last allegations, I note that defendant’s stated reason for plaintiffs inter-store transfer — his very poor sales performance at the store where Carroll worked — while a legitimate justification undercutting plaintiffs challenge to his transfer, is entirely consistent with his hostile work environment claim.
The points made above regarding frequency, severity, offensiveness, and interference with performance indicate to me that plaintiffs work environment could reasonably be perceived as hostile or abusive by anyone whose religious views or deportment elicited Carroll’s denunciation or intrusive proselytizing. And plaintiff certainly indicated that he perceived the environment in that way. See also id. at 91-93.
On the record developed thus far, which concededly may be skewed by the prominence of plaintiffs testimony, I cannot say that defendant has negated the existence of a triable case on the factors that control the disposition of plaintiffs hostile environment claim. I would therefore reverse the entry of summary judgment for the defendant on this one particular aspect of the case and remand for further proceedings.

. The district court denied summary judgment to defendant on a consolidated claim of religious hostility asserted by Sharon Yantes, despite a very similar evidentiary record. At the summary judgment hearing, the court indicated that given the distinctly Christian prejudices expressed by Carroll, it viewed the fact that plaintiff was also Christian while Yantes was Jewish "a glaring distinction in the facts as they exist between [plaintiff] and Ms. Yantes.” Aplt.App. at 215.

. "A finding of pervasiveness or severity need not rest solely on actions aimed directly at a plaintiff, however, but may also consider *819 harassment of others in the workplace.” Nieto, 268 F.3d at 1219 n. 7.